

FILED
2020 Mar-13  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **Lisa Powell, as administrator** | ) | |
| **of the Estate of Ray Powell; and** | ) | |
| **Lisa Powell Individually.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | |
| **Ascension Health Alliance** | ) | |
| **d/b/a St. Vincent's East Hospital;** | ) | |
| **and Fictitious Defendants being** | ) | |
| **those entities, corporations,** | ) | |
| **individuals, persons, or other legal** | ) | |
| **entity responsible for the damages** | ) | |
| **and injuries to the Plaintiffs whose** | ) | |
| **names are unknown at this time** | ) | |
| **but will be added by amendment** | ) | |
| **when ascertained.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

Plaintiff, Lisa Powell, in her capacity as the Administrator of the Estate of Ray Powell, deceased, and Lisa Powell, individually, by and through the undersigned counsel, sues Ascension Health Alliance, d/b/a St. Vincent's East Hospital (hereinafter "St. Vincent's East" or "defendant"), and Fictitious Defendants being those entities, corporations, individuals, persons, or other legal entity responsible for the damages and injuries to the plaintiffs whose names are unknown

at this time but will be added by amendment when ascertained, and alleges the following:

## THE PARTIES

1.  Plaintiff, Lisa Powell, as administrator of the Estate of Ray Powell, and Lisa Powell, individually, lived at 300 25th Ave. NE, Birmingham, AL 35215 during the occurrence of the relevant events discussed in this Complaint.

2.  Defendant, Ascension Health Alliance, is an organization that owns, operates, and/or leases a hospitals nationally headquartered in St. Louis, MO.

3.  Defendant, St. Vincent's East, is an organization that owns, operates, and/or leases a hospital located at 100 Pilot Medical Dr. #175, Birmingham, AL 35235.

4.  Fictitious Defendants, being those entities, corporations, individuals, persons, or other legal entity responsible for the damages and injuries to the Plaintiffs whose names are unknown at this time but will be added by amendment when ascertained.

## JURISDICTION

5.  This is an action for declaratory and injunctive relief pursuant to Title III of the American's With Disabilities Act, 42 U.S.C. § 12181, et seq., (hereinafter the "ADA"), and § 504 of the Rehabilitation Act of 1973. This Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.     Venue is proper in this Court, the Southern Division of the Northern District of Alabama, pursuant to 28 U.S.C. § 1391(b).

7.     Ray Powell (hereinafter "Mr. Powell" or "patient") was a citizen of the State of Alabama, residing in this District and Division, who was over 19 years of age. Mr. Powell was disabled within the meaning of the ADA in that he is deaf.

8.     Lisa Powell, who was appointed Administrator of the Estate of Ray Powell, deceased on the 11th day of March, 2020 by the Jefferson County, Alabama Probate Court, brings this action on behalf of the estate and all other deaf and hard of hearing persons to assure that public spaces and commercial premises are accessible to, and usable by, the deaf and hard of hearing, to assure that the deaf and hard of hearing are not excluded from the enjoyment and use of the benefits and services, programs, and activities of public accommodations, and to assure that the deaf and hard of hearing are not discriminated against because of their disabilities.

9.     Mr. Powell suffered as a result of the defendant's actions and/or inaction as more fully articulated herein.

10.     Lisa Powell (hereinafter "Mrs. Powell") is a citizen of the State of Alabama, residing in this District and Division, who is over 19 years of age. Mrs. Powell is disabled within the meaning of the ADA in that she is deaf. Mrs. Powell brings this action on behalf of herself and all other similarly situated deaf and hard of hearing persons to assure that public spaces and commercial premises are

accessible to, and usable by, the deaf and hard of hearing, to assure that the deaf and hard of hearing are not excluded from the enjoyment and use of the benefits and services, programs, and activities of public accommodations, and to assure that the deaf and hard of hearing are not discriminated against because of their disabilities.

11.     Mrs. Powell has suffered as a result of the Defendant's actions and/or inaction as more fully articulated herein.

12.     St. Vincent's East is, upon information and belief, an Alabama Corporation which is authorized to do business, and is doing business, in the State of Alabama, within this District and Division. Upon information and belief, St. Vincent East has its principal place of business in Jefferson County, Alabama.

13.     All events giving rise to this lawsuit occurred in Jefferson County, Alabama.

## FACTUAL ALLEGATIONS

14.     Ray Powell was deaf. He was substantially limited in the major life activities of hearing and speaking and was an "individual with a disability." He used American Sign Language as his primary means of communication.

15.     Lisa Powell is deaf. She is substantially limited in the major life activities of hearing and speaking and is an "individual with a disability." She uses American Sign Language as her primary means of communication.

16.     Roxanne Powell is a daughter of Mr. and Mrs. Powell. She is hearing.

17.     Kisa Powell is a daughter if Mr. and Mr. Powell. She is hearing.

18.     Mr. and Mrs. Powell have seen the defendant for medical services numerous times since April 2010. The hospital was aware of their disability.

19.     On numerous occasions, the defendant attempted to use members of the Powell family to communicate with Mr. and Mrs. Powell.  These attempts were ineffective because these persons are not qualified interpreters.  Although the Powell's are able to communicate about simple and familiar topics, they do not have a system for communicating complex and unfamiliar information, such as information regarding medical care. Therefore, conveying information to family members was not an effective means of communicating with Mr. and/or Mrs. Powell.

20.     The events that follow took place over the course of eight years, during which both Mr. and Mrs. Powell received medical care from the defendant. There is well documented evidence that the defendant had knowledge of the Powells' disabilities yet there have been numerous instances where interpreter services were denied. In each instance where defendant denied Mr. and Mrs. Powell interpreter services, they were prevented from accessing vital information about their own health and the health of the other. The defendant made important healthcare decisions without informed consent and performed tests and procedures without adequate explanation of the process, the risks, or the results.

**Incident: April 4, 2010**

21.     On April 4, 2010, Mr. Powell was admitted at St. Vincent's East with a chief complaint of chest pain.

22.     The history and physical report note the patient information was obtained from the medical records and emergency department physician because the patient was a deaf mute.

23.     An emergency nursing record noted that additional information was obtained from the patient through his daughter using sign language.

24.     The Interdisciplinary Plan of Care checked that there was a need to provide special communication. It also noted that both the patient and his wife were deaf mute, and that the daughter Roxanne interprets.

25.     No interpreter or video replay interpreter were present in the ER.

26.     Dr. Robert Foster's consultation summary reported that Mr. Powell had "progressive fatigue, dyspnea, according to the patient, who is deaf."

**Incident: April 5, 2010**

27.     On April 5, 2010, Interdisciplinary Caregiver Progress Notes again noted that Mr. Powell and his wife are deaf/mutes and the daughter signs.

28.     The same notes say that Mr. Powell refused to execute a consent to treatment until he could speak with his daughter about risks.

29.     No interpreter or video replay interpreter were present when Mr. Powell was asked to consent to treatment.

30.     The nursing service was notified about the need for someone who knows sign language, but the hospital record does not indicate that an interpreter or video replay interpreter was provided.

### Incident: April 6, 2010

31.     On April 6, 2010, progress notes state that the patient and his wife understand and agree to proceed.

32.     There is no mention of an interpreter or video replay interpreter being present.

33.     Patient underwent a left heart catherization.

### Incident: April 7, 2010

34.     On April 7, 2010, Mr. Powell underwent coronary artery bypass grafting times five utilizing left internal mammary artery grafted to the left anterior descending artery, aortosaphenous vein grafted sequentially to the diagonal, intermeduis, and OM, and aortosaphenous vein grafted to the PDA, endoscopic vein harvest, pericardial reconstruction with xenograft patch, ON-Q pain pump insertion.

35.     Intraoperative records state that the family was notified of the patient's status through interpreter.

36.    All communication both before and after the surgery was relayed via interpreter showing that defendant had the capability to provide interpretive services but had not provided the same until the day of surgery.

37.    Additional, pre- and post-operative notes indicate decreased anxiety during pre- and post-operative experiences due to the presence of an interpreter.

### Incident: April 14, 2010

38.    On April 14, 2010, Mr. Powell had recovered from his procedure and was discharged from St. Vincent's East.

39.    The final progress notes state that billing and discharge paperwork was not signed by patient or spouse, as Mrs. Powell said they were filing it through Blue Cross and Blue Shield Insurance. While this interaction was interpreted through sign language, the misunderstanding reflects the inadequacy of the services provided.

### Incident: December 1, 2013

40.    On December 1, 2013, Mr. Powell went to St. Vincent's East Emergency Room after experiencing nausea and vomiting.

41.    The emergency department charts show the doctors noted the patient and the spouse were both deaf.

42.    There is no mention of an interpreter or video replay interpreter being present.

### Incident: March 13, 2018

43.     On March 13, 2018, Mr. Powell was experiencing severe chest pains and sought treatment in the emergency room at St. Vincent's East.

44.     Mrs. Powell accompanied Mr. Powell to St. Vincent's East.

45.     St. Vincent's East did not have an interpreter in the emergency room.

46.     Spouse requested interpretive services but none were provide during extensive initial interaction with treatment team and physician.

47.     The employees at St. Vincent's East later attempted to communicate with Mr. Powell through a video replay interpreter in the emergency room but the quality was inadequate due to poor internet connection.

48.     Additionally, Mr. Powell could not see the video replay interpreter because he was lying flat on his back. Once Mr. Powell was taken to a room for treatment, there was no video replay interpreter or interpreter.

49.     St. Vincent's East's emergency documentation on Mr. Powell acknowledges that the he was unable to tell the doctor about his medications and dosages due to lack of interpretive services.

50.     As a result of the lack of working interpretive services, treatment decisions were made without even a cursory history from the patient or his Spouse.

51.     The emergency documentation does not have Mr. Powell's signature acknowledging understanding.

52.    The St. Vincent's East employees tried to get Mrs. Powell to sign consent to treatment documents in the room without an interpreter or video replay interpreter.

53.    Emergency documentation states that the history of the present illness was obtained from emergency room physician and chart notes.

54.    The physician's consultation notes state that during the few minutes of their conversation the patient's blood pressure continued to decline. A code was called, and the patient was subsequently pronounced dead.

55.    Staff of St. Vincent's East requested Kisa Powell inform Mrs. Powell that her husband was dead.

56.    Employees had Mrs. Powell sign documents for death certificate without an interpreter.

**Incident: May 3, 2019**

57.    On May 3, 2019, Mrs. Powell was admitted at St. Vincent's East with the chief complaint of back pain.

58.    The emergency documentation states that the patient arrived via EMS and acknowledged that she was deaf.

59.    The St. Vincent's East laptop with visual translator aid was not working. Instead the staff used pen and paper to obtain medical information from Mrs. Powell.

60.     These same notes acknowledge that the patient's history was limited secondary to the patient being deaf but that they could communicate by writing notes.

**Future Incidents:**

61.     Moving forward, Mrs. Powell will continue to require the services of St. Vincent's East because it is the closest hospital in proximity to her residence.

62.     Mrs. Powell has health problems and is likely to utilize the services of St. Vincent's East in the future.

63.     St. Vincent's East has failed to provide interpretative services in the past for Mrs. Powell and her deceased husband and is likely to continue in this failure in the future, absent injunctive relief from this Honorable Court.

## CLAIM I
**(Americans With Disabilities Act)**

64.     Plaintiffs repeat and re-allege paragraphs 1 through 58 in support of this claim.

65.     St. Vincent is in violation of 42 U.S.C. § 12181 et. seq. and 28 C.F.R. 36.303 et seq., and is discriminating against the plaintiffs as a result of, *inter alia*, the following:

66.     In addition to the above delineated violations, on information and belief, there were other miscellaneous violations of the ADA and regulations promulgated pursuant thereto.

67.   The Powells were denied access to, and the benefits of, services, programs and activities of St. Vincent's East and were discriminated against and suffered damages caused by the defendant because of the above-described violations of the ADA. Unless St. Vincent's East and the other defendant are brought into compliance with the ADA, similarly situated persons, will continue to be denied access to, and the benefits of services, programs and activities of St. Vincent's East in the future.

68.   Pursuant to the ADA, 42 U.S.C. § 12101, et seq. and 28 C.F.R. § 36.304, St. Vincent's East was required to make itself a place of public accommodation, accessible to persons with disabilities by January 26, 1992. To date, St. Vincent's East has failed to comply with this mandate.

69.   Plaintiffs' counsel is entitled to recover those attorney's fees, expert's fees, and costs and expenses incurred in this case from defendant pursuant to 42 U.S.C. § 12205.

70.   Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant injunctive relief including an order to provide such appropriate auxiliary aids and services as to assure effective communication with individuals with disabilities to the extent required by the ADA.

## CLAIM II
### (Rehabilitation Act)

71.     Plaintiffs were individuals with disabilities under section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

72.     Defendant are recipients of federal financial assistance, including but not limited to their acceptance of Medicare and Medicaid.

73.     Defendant discriminated against the plaintiffs on the basis of their disability by denying the plaintiffs auxiliary aids and services necessary to ensure effective communication between the plaintiffs and defendant, equal access, and an equal opportunity to participate in and benefit from defendant' health care services in violation of section 504 of the Rehabilitation Act.

74.     As a proximate result of defendant' unlawful conduct Mr. and Mrs. Powell suffered extreme emotional distress, mental anguish, embarrassment, humiliation and other damages.

## CLAIM III
### (Invasion of Privacy)

75.     Plaintiffs incorporate paragraphs 1 through 69 as fully set out herein.

76.     By forcing plaintiffs' family to serve as interpreters for plaintiffs during the course of their stays with defendant, defendant forced the disclosure of personal information involving the plaintiffs which the plaintiffs would not have otherwise disclosed to members of their family.

77.    As a proximate result of the force disclosure of this personal information, plaintiffs suffered damages, including but not limited to, mental anguish and emotional distress.

## RELIEF

WHEREFORE, plaintiffs respectfully request that the Court provide the following relief:

A. That the Court declare that the policies, procedures, and services provided by defendant are discriminatory and violative of the ADA and § 504 of the Rehabilitation Act of 1973;

B. That the Court enter an Order requiring St. Vincent's East to alter its practices to make its facilities accessible to and usable by individuals with disabilities to the extent required by Title III of the ADA and § 504 of the Rehabilitation Act of 1973;

C. That the Court enter an Order directing St. Vincent's East to evaluate and neutralize its policies, policies, practices, and procedures towards persons with disabilities, including the deaf and hard of hearing, for such reasonable time so as to allow St. Vincent's East to undertake and complete corrective procedures;

D. That the Court enter an Order mandating that St. Vincent's East undertake a self-evaluation and that such evaluation contain a description of all St.

Vincent's East's programs, activities, and services; a review of all policies and practices that govern the administration of such programs, policies and services; and an analysis of whether the policies and practices adversely affect the full participation of individuals with disabilities, including the deaf and hard of hearing, and such programs, services, and activities;

E. That the Court enter and Order mandating defendant to expeditiously make all reasonable and appropriate modifications in their policies, practices and procedures, expressly including the provision of qualified interpreters, transcription services, and written materials as well as the provision of telecommunications devices for the deaf, telephone handset amplifiers, television decoders, and telephones compatible with hearing aids, as is necessary to bring St. Vincent's East within compliance with the strictures of the ADA, and to take all such other steps as are reasonable and necessary to insure that persons with disabilities, including the deaf and hard of hearing, are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against;

F. That the Court award reasonable attorney's fees, costs (including expert's fees) and other expenses of suit, to the plaintiffs; and,

G. That the Court award such other and further relief as it deems necessary, just, and proper, including, as appropriate, compensatory and punitive damages.

Respectfully submitted,

**C. BURTON DUNN, ESQ.**
FIVE POINTS LAW GROUP, LLC.
2151 Highland Ave S., Suite 205
Birmingham, AL 35205
205-352-4455
burton@5pointslaw.com

## JURY DEMAND

Plaintiffs hereby demand that this action be tried before a jury.

C. Burton Dunn

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing by placing a copy of the same in the U.S. Mail, postage pre-paid to the following parties on this the 13th day of March, 2020:

St. Vincent's East
100 Pilot Medical Drive, #175
Birmingham, AL 35235

_____
OF COUNSEL