FILED
2021 Mar-15  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LISA POWELL, as Administrator of the Estate of Ray Powell; and LISA POWELL, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 2:20-cv-00343-MHH |
| ASCENSION HEALTH ALLIANCE d/b/a ST. VINCENT'S EAST HOSPITAL, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

In accordance with the Court's Order of February 10, 2021 [Doc. 19], Plaintiff, Lisa Powell, presents this her First Amended Complaint and alleges as follows:

Plaintiff Lisa Powell ("Powell"), in her capacity as the Administrator of the Estate of her deceased husband Ray Powell, on behalf of herself, and all others similarly situated, by and through their undersigned attorneys, hereby file this First Amended Complaint as a Class Action lawsuit against Ascension Health Alliance and St. Vincent's East (hereinafter collectively referred to as "St. Vincent's" or "Defendants"), and allege as follows:

## INTRODUCTION

1.    Plaintiff, by filing this class action seeks to put an end to systemic civil rights violations committed by Defendants, against the deaf and hard of hearing and their family members forced to interpret on behalf of their loved ones, who without the obligations imposed by Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), would otherwise be denied equal access to the goods and services provided to able-bodied members of the public in the United States. Defendants are denying individuals who are deaf and hard of hearing equal access to the goods and services provided to their able-bodied p a t i e n t s  at St. Vincent's in violation of the ADA.

2.    Plaintiffs bring this action individually and on behalf of all others similarly situated against Defendants, alleging violations of Title III of the ADA and its implementing regulations, in connection with access barriers at public accommodations owned, operated, controlled, leased to and/or leased by Defendants at St. Vincent's East.

3.    Plaintiff Powell is deaf and is therefore limited in the major life activity of communicating freely without the accommodation of access to qualified sign language interpreting services.

4.    Plaintiff, her deceased husband and hearing family members have patronized Defendants' facilities, within the two years preceding the filing of their

initial Complaint [Doc.1] and intend to continue to patronize Defendants' facilities. However, unless Defendants are required to remove the access barriers described below, Plaintiff will continue to be denied full access to Defendants' facilities as described and will be denied the ability to fully use Defendants' facilities.

5.      Plaintiff advocates for the rights of similarly situated disabled persons and is acting on their behalf for purposes of asserting their civil rights as well as for purposes of monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA.

6.      Therefore, on behalf of a class of similarly situated individuals, Plaintiff seeks a declaration that Defendants' facilities violate federal law as described and an injunction requiring Defendants to remove the identified access barriers so that Defendants' facilities are fully accessible to, and independently usable by individuals who are deaf and hard of hearing, as required by the ADA. Plaintiff further requests that, given Defendants' historical failure to comply with the ADA's mandate, over a period of many years, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendants are brought into compliance with the relevant requirements of the ADA and to ensure that Defendants  revise their facility-wide policies, practices, and procedures that are presently ineffective at curbing noncompliance with the ADA at St. Vincent's East.

3

## THE ADA AND ITS IMPLEMENTING REGULATIONS

7.      Congress enacted the ADA well over twenty-five years ago and in so doing clearly stated its intention to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

8.      The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life. This lawsuit focuses Defendants' systemic willful failure to maintain their places of public accommodation in compliance with the ADA.

9.      Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

10.     A unanimous Supreme Court upheld the constitutionality of the public accommodations provisions of the Civil Rights Act of 1964 in *Heart of Atlanta*

4

*Motel, Inc. v. United States*, 379 U.S. 241 (1964). The Supreme Court agreed that Congress possessed the authority to outlaw discrimination in public accommodations on the basis of race. *Id.* at 261-62. Congress acted again to outlaw discrimination in public accommodations—this time on the basis of disability. 42 U.S.C. § 12182(b)(1)(D).

11.    Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of [accommodations] by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Congress made no distinction whether the owner was a natural person, a partnership, a corporation, or any other type of structure allowed under the law. Congress outlawed discrimination on the basis of disability.

12.    The ADA expressly contemplates loss of opportunity as an actionable injury. Congress included within the Act the stated goal of assuring "equality of opportunity" to disabled persons. 42 U.S.C. § 12101(a). The ADA provides a cause of action to "any person who is being subjected to discrimination" and expressly states that "it shall be discriminatory to subject an individual *or class of individuals* on the basis of disability … *to a denial of the* opportunity of the individual *or class* to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a) and (b)(1)(A)(i)(emphasis added).

5

13.    A disabled plaintiff is denied the opportunity to participate in or benefit from the goods and services, which is among the ADA's general prohibitions, in a number of ways, including a defendant's "failure to remove barriers," which is among the specific prohibitions listed in § 12182(b)(2)(A)(iv). Thus, the disabled plaintiff suffers an ongoing injury so long as he or she is effectively denied the opportunity to participate in or benefit from the goods, services, facilities, advantages, or accommodations of the entity.

### THE PARTIES

14.    Ray Powell was a citizen of the State of Alabama, residing in this District and Division, who was over 19 years of age. Mr. Powell was disabled within the meaning of the ADA in that he was deaf. Mr. Powell died in the care of St. Vincent's on the 11th day of March 2020.

15.    Lisa Powell (hereinafter "Powell") is a citizen of the State of Alabama, residing in this District and Division, who is over 19 years of age. Powell is disabled within the meaning of the ADA in that she is deaf. Lisa Powell, appointed by the Jefferson County, Alabama Probate Court as Administrator of the Estate of Ray Powell, brings this action on behalf of Ray Powell, herself, and all other similarly situated deaf and hard of hearing persons and those members of their families who have been wrongfully called upon to provide interpretive services for their deaf and hard of hearing family members to assure that public spaces and commercial

6

premises are accessible to, and usable by, the deaf and hard of hearing, to assure that the deaf and hard of hearing are not excluded from the enjoyment and use of the benefits and services, programs, and activities of public accommodations, to assure that the deaf and hard of hearing are not discriminated against because of their disabilities, and to assure that their family members are not placed in the untenable position of having to translate on behalf of their loved ones under stressful and emotional conditions, during which such stressors and or the awkward nature of the circumstances make such translation unreliable, particularly in the environment in which complex medical terms and procedures are susceptible to inaccurate translation. [1]

16.    Powell has suffered as a result of the Defendants' actions and/or inaction as more fully articulated herein.

17.    St. Vincent's East is, upon information and belief, an Alabama Corporation which is authorized to do business, and is doing business, in the State

---

[1] It is now well established under the professional rules of ethics among sign-language interpreters that not only does interpreting in the complex realm of medical circumstances require highly skilled interpreters, but that drafting family members to serve as interpreters for their loved ones is highly improper. To do so, places the family member in an untenable position of transmitting complex and often emotionally charged information accurately, when their skill level may be inadequate, or the information they are asked to transmit may be of such dire circumstances they alter the information in an effort to shield their loved one from an unfavorable prognosis, and it also invades the privacy rights of the patient, who may not care to have certain health-related information revealed to their family members without consent. *See generally*, National Code of Ethics for Interpreters in Health Care,
https://www.ncihc.org/assets/documents/publications/NCIHC%20National%20Code%20of%20 Ethics.pdf.

of Alabama, within this District and Division. Upon information and belief, St. Vincent's East has its principal place of business in Jefferson County, Alabama. All events giving rise to this lawsuit occurred in Jefferson County, Alabama.

18.    Defendant, Ascension Health Alliance, is an organization that owns, operates, and/or leases health care facilities nationally, including St. Vincent's East, and is headquartered in St. Louis, MO.

19.    Defendant, St. Vincent's East, is an organization that owns, operates, and/or leases a health care facility, which is a place of public accommodation, located at 100 Pilot Medical Dr. #175, Birmingham, AL 35235.

## JURISDICTION AND VENUE

20.    This is an action for declaratory and injunctive relief pursuant to Title III of the ADA, § 504 of the Rehabilitation Act of 1973, and § 1557 of the Patient Protection and Affordable Care Act.  This Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

21.    Venue is proper in this Court, the Southern Division of the Northern District of Alabama, pursuant to 28 U.S.C. § 139l(b).

## FACTUAL ALLEGATIONS

22.    Ray Powell was deaf. He was substantially limited in the major life activities of hearing and speaking and was an "individual with a disability." He used American Sign Language as his primary means of communication.

23.    Lisa Powell is deaf. She is substantially limited in the major life activities of hearing and speaking and is an "individual with a disability." She uses American Sign Language as her primary means of communication.

24.    Roxanne Powell is a daughter of Mr. and Mrs. Powell. She is hearing.

25.    Kisa Powell is a daughter of Mr. and Mrs. Powell. She is hearing.

26.    Mr. and Mrs. Powell have seen the Defendants for medical services numerous times since April 2010. The hospital and its staff were well aware of their disabilities.

27.    On numerous occasions, the Defendants inappropriately attempted to use members of the Powell family to communicate with Mr. and Mrs. Powell, which is both unethical, violates HIPPA, and is generally ineffective because these persons are not certified interpreters. Although the Powell's are able to communicate about simple and familiar topics, they do not have a system for communicating complex and unfamiliar information, such as information regarding medical care. Therefore,

9

conveying information to family members was not an effective means of communicating with Mr. or Mrs. Powell.

28.    The events that follow took place over the course of eight years, during which both Mr. and Mrs. Powell received medical care from the Defendants. There is well documented evidence that the Defendants had knowledge of the Powell's disabilities yet there have been numerous instances when Defendants denied the Powells interpreter services. In each instance where Defendants denied the Powells interpreter services, they were prevented from accessing vital information about their own health and the health of the other. The Defendants were therefore forced to make important healthcare decisions without informed consent and were made to undergo tests and procedures without adequate explanation of the process, the risks, or the results.

**Incident: April 4, 2010**

29.    On April 4, 2010, Mr. Powell was admitted at St. Vincent's East with a chief complaint of chest pain.

30.    The history and physical report note the patient's information was obtained from his medical records and an emergency department physician because the patient was a deaf mute.

31.    An emergency nursing record noted that additional information was obtained from the patient through his daughter using sign language.

10

32.    The Interdisciplinary Plan of Care checked that there was a need to provide special communication. It also noted that both the patient and his wife were deaf mute, and that the daughter Roxanne interprets.

33.    No interpreter or video relay interpreter were present in the emergency room.

34.    Dr. Robert Foster's consultation summary reported that Mr. Powell had "progressive fatigue, dyspnea, according to the patient, who is deaf."

**Incident: April 5, 2010**

35.    On April 5, 2010, Interdisciplinary Caregiver Progress Notes again noted that Mr. Powell and his wife are deaf/mutes and the daughter signs.

36.    The same notes say that Mr. Powell refused to execute a consent to treatment until he could speak with his daughter about risks.

37.    No interpreter or video relay interpreter were provided to Mr. Powell to assist him with communication, yet St. Vincent's East proceeded to ask Mr. Powell to consent to treatment.

38.    The nursing service was notified about the need for someone who knows sign language, but the hospital record does not indicate that an interpreter or video relay interpreter was provided.

11

**Incident: April 6, 2010**

39.    On April 6, 2010, progress notes state that the patient and his wife understand and agree to proceed.

40.    There is no mention of an interpreter or video relay interpreter being present.

41.    Mr. Powell underwent a left heart catherization.

**Incident: April 7, 2010**

42.    On April 7, 2010, Mr. Powell underwent coronary artery bypass grafting times five utilizing left internal mammary artery grafted to the left anterior descending artery, aortosaphenous vein grafted sequentially to the diagonal, intermeduis, and OM, and aortosaphenous vein grafted to the PDA, endoscopic vein harvest, pericardial reconstruction with xenograft patch, ON-Q pain pump insertion.

43.    Intraoperative records state that the family was notified of the patient's status through interpreter.

44.    All communication both before and after the surgery was relayed via interpreter showing that Defendants had the capability to provide interpretive services but had not provided these services until the day of surgery.

45.     Additional, pre-operative and post-operative notes indicate decreased anxiety during pre- and post-operative experiences due to the presence of an interpreter.

**Incident: April 14, 2010**

46.     On April 14, 2010, Mr. Powell had recovered from his procedure and was discharged from St. Vincent's East.

47.     The final progress notes state that billing and discharge paperwork was not signed by patient or spouse, as Mrs. Powell said they were filing it through Blue Cross and Blue Shield Insurance. While this interaction was interpreted through sign language, the misunderstanding reflects the inadequacy of the services provided.

**Incident:  December 1, 2013**

48.     On December 1, 2013, Mr. Powell went to St. Vincent's East Emergency Room after experiencing nausea and vomiting.

49.     The emergency department charts show the doctors noted the patient and the spouse were both deaf.

50.     There is no mention of an interpreter or video relay interpreter having been present, though upon information and belief they were requested.

**Incident:  March 13, 2018**

51.    On March 13, 2018, Mr. Powell experienced severe chest pains and sought treatment in the emergency room at St. Vincent's East.

52.    Mrs. Powell accompanied Mr. Powell to St. Vincent's East.

53.    St. Vincent's East did not have an interpreter in the emergency room or a working video relay interpreter available to accommodate the Powell's disability.

54.    Mrs. Powell requested interpretive services but none were provided during extensive initial interaction with the treatment team and physician.

55.    The employees at St. Vincent's East later attempted to communicate with Mr. Powell through a video relay interpreter in the emergency room but the quality was inadequate due to a poor internet connection.

56.    In addition, Mr. Powell could not see the video relay interpreter because he was lying flat on his back. Once Mr. Powell was taken to a critical care unit for treatment, the hospital failed and/or refused to provide him with a video relay interpreter or sign language interpreter.

57.    St. Vincent's East's emergency documentation on Mr. Powell acknowledges that he was unable to tell the doctor about his medications and dosages due to a lack of interpretive services.

58.    As a result of the lack of working interpretive services, treatment decisions were made without even a cursory history from the patient or his spouse.

14

59.    The emergency documentation does not have Mr. Powell's signature acknowledging that he understood the information provided to him or the risks associated with the procedures performed upon him by St. Vincent's health care providers.

60.    The St. Vincent's East employees tried to get Mrs. Powell to sign consent to treatment documents in the room without an interpreter or video relay interpreter.

61.    Emergency documentation states that the history of the present illness was obtained from emergency room physician and chart notes.

62.    The physician's consultation notes state that during the few minutes of their conversation the patient's blood pressure continued to decline. A code was called, and Mr. Powell was subsequently pronounced dead.

63.    Staff of St. Vincent's East requested that Kisa Powell inform Mrs. Powell that her husband had died.

64.    St. Vincent's employees had Mrs. Powell sign documents for the death certificate without the assistance of an interpreter.

**Incident: May 3, 2019**

65.    On May 3, 2019, Mrs. Powell presented at St. Vincent's East with the chief complaint of back pain.

66.    The emergency documentation states that the patient arrived via EMS and acknowledged that she was deaf.

67.    The St. Vincent's East laptop with visual translator aid was not working. Instead, the staff used pen and paper to obtain medical information from Mrs. Powell.

68.    These same notes acknowledge that the patient's history was limited secondary to the patient being deaf but claimed that they could communicate by writing notes.

**Future Incidents:**

69.    Moving forward, Mrs. Powell will continue to require the services of St. Vincent's East because it is the closest hospital in proximity to her residence.

70.    Mrs. Powell has health problems and expects the need to utilize the services of St. Vincent's East in the future.

71.    St. Vincent's East has failed to provide interpretative services in the past for Mrs. Powell and her deceased husband and is likely to continue in this failure in the future, absent injunctive relief from this Honorable Court.

## CLASS ACTION ALLEGATIONS

72.    Defendant has discriminated against, and continues to discriminate against, Powell and other members of the deaf and hard of hearing community as more fully set forth below in this First Amended Complaint.

73.    The individual plaintiff encountered some or all of the accessibility barriers described in this class action complaint at Defendants' hospital.

74.    Upon information and belief, class members have experienced the same barriers to full and equal access that the individual plaintiff has experienced, and likewise have been denied sign language interpreting services or other reasonable accommodations such as working video relay services.

75.    Class members have been injured by Defendants' failure to comply with the ADA.

76.    Plaintiff Powell brings this class action pursuant to Fed. R. Civ. P. 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself individually and on behalf of the following class of persons:

> All persons with hearing impairment who use American Sign Language as their principal form of communication, who were denied the full and equal enjoyment of the goods, services, facilities privileges, advantages, or accommodations of St. Vincent's East on the basis of disability because of the failure of Defendants to provide certified sign language interpreters or other forms of reasonable accommodation thereby making their provision of health care

services inaccessible to members of the deaf and hard of hearing community and their families.

77.    Excluded from the class are Defendants Ascension Health Alliance and St. Vincent's East, any person, firm, trust, corporation or other entity affiliated with the Defendants, and members of the federal judiciary.

78.    Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Class, or any applicable subclasses, are so numerous and geographically dispersed that joinder of all members is impracticable.  As of 2018, the Centers for Disease Control and Prevention estimated that approximately 286,364 or 6.8% of the population of the State of Alabama of adults over the age of 18 suffered significant hearing loss.[2]  As of 2018, Jefferson County, Alabama, the primary service area for St. Vincent's East, was estimated to have a population of 659,429 residents.[3]  Assuming 6.8% of these residents were deaf or hard of hearing, then approximately 44,841 citizens of Jefferson County, Alabama suffered significant hearing loss, where St. Vincent's East is located.  As such, the class identified is believed to consist of hundreds if not thousands of members, and joinder of all such class members in this lawsuit is impracticable.  Courts frequently use census data and common sense to determine

---

[2] Centers for Disease Control and Prevention, National Center on Birth Defects and Developmental Disabilities, Division of Human Development and Disability.  Disability and Health Data System (DHDS) Data [online].  [accessed February 11, 2021].  URL: https://dhds.cdc.gov\

[3] See U. S. Census Bureau Quick Facts: Jefferson County, Alabama
 [https://www.census.gov/quickfacts/fact/table].

that numerosity has been satisfied. *See Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (using U.S. Census data to infer that thousands of persons with mobility and/or vision disabilities visit defendant's park each year).

79.    Pursuant to Fed. R. Civ. P. 23(a)(2) common questions of fact and law exist as to all members of the Class and subclasses. These common questions include but are not limited to, whether: Defendants violated Title III of the ADA with regard to providing equal access to medical services at its St. Vincent's East hospital campus, making certified sign language interpreters upon request available to its patients and their families, providing alternative means of communication, including video relay and/or TTY services to patients or their families, providing adequate training to physicians and staff such that linguistic and culturally appropriate services are available and whenever possible provided to members of the deaf and hard of hearing communities. All of the foregoing questions are common to the Class or any applicable subclasses(s).

80.    The claims of the Proposed Class Representative are typical of the claims of the Class and/or any subclass. The individual named Plaintiff, like all other members of the Class and/or subclasses, each primarily use American Sign Language as their primary form of communication, and claim that Defendants have intentionally violated the ADA by failing to provide sign language services or

appropriate alternative accommodations to the deaf and hard of hearing and have therefore denied equal access to Defendants' medical services thereby rendering those services inaccessible, all in violation of Title III of the ADA.  The Proposed Class Representative will fairly and adequately protect the interests of the Class and any applicable subclasses.  Plaintiff has no interests that are antagonistic to absent Class members or members of any applicable subclass.   Plaintiff has retained counsel with extensive experience in litigation brought under the ADA and with class action litigation.

81.    The Proposed Representative and retained counsel are aware of their fiduciary responsibilities to the Class and any subclasses and are determined to diligently discharge those duties.

82.    This action may be maintained pursuant to Rule 23(b)(2), because Defendants' actions in designing and/or controlling the discriminatory provision of health care services in a manner that deny members of the Class equal access are actions that apply generally to the Class and any applicable subclass and require injunctive and declaratory relief, therefore, is appropriate for the Class as a whole.

## SUBSTANTIVE VIOLATIONS

83.    The class allegations contained in the previous paragraphs are incorporated by reference.

84.    The barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to the deaf and hard of hearing and that Defendants' facilities were maintained in a manner so as to ensure that they remained inaccessible to members of the putative class.

85.    Defendants repeated and systemic failures to provide equal access to its facilities so that they are readily inaccessible and unusable, to provide certified sign language interpreters, or reasonable alternative methods of communication, such as working video relay conferencing, and to alter their policies and procedures to prevent unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

86.    Defendants are required to provide services to individuals who are deaf or hard of hearing the full and equal enjoyment of its facilities.  42 U.S.C. § 12182(a).

87.    Defendants have failed, and continue to fail, to provide individuals who are deaf or hard of hearing with full and equal enjoyment of its facilities and health care services.

88.    Defendants have discriminated against Plaintiff and the Class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals with disabilities in violation of 42 U.S.C. § 12182(a) as described above.

89.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

90.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

91.     Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who are deaf or hard of hearing, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## CLAIM I

## (Americans With Disabilities Act)

92.     Plaintiffs incorporate paragraphs 1 through 90 in support of this claim.

93.     St. Vincent is in violation of 42 U.S.C. § 12181 *et. seq*. and 28 C.F.R. 36.303 *et seq*., and is discriminating against the Plaintiffs and others similarly situated persons as a result of, inter alia, the following:

94.     In addition to the above delineated violations, on information and belief, there were other miscellaneous violations of the ADA and regulations promulgated pursuant hereto.

95.    The Powells were denied access to, and the benefits of, services, programs and activities of St. Vincent's East and were discriminated against and suffered damages caused by the Defendants because of the above-described violations of the ADA. Unless St. Vincent's East and the other Defendant are brought into compliance with the ADA, similarly situated persons, will continue to be denied access to, and the benefits of services, programs and activities of St. Vincent's East in the future.

96.    Pursuant to the ADA, 42 U.S.C. § 12101, *et seq*. and 28 C.F.R. § 36.304, St. Vincent's East was required to make itself a place of public accommodation, accessible to persons with disabilities by January 26, 1992. To date, St. Vincent's East has failed to comply with this mandate.

97.    Plaintiffs' counsel is entitled to recover those attorney's fees, expert's fees, and costs and expenses incurred in this case from Defendants pursuant to 42 U.S.C. § 12205.

98.    Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant injunctive relief including an order to provide such appropriate auxiliary aids and services as to assure effective communication with individuals with disabilities to the extent required by the ADA.

## CLAIM II

### (Rehabilitation Act)

99.    Plaintiff incorporates paragraphs 1 through 90 as if fully set out herein.

100.    Plaintiff is an individual with a disability as defined under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

101.    Defendants are recipients of federal financial assistance, including but not limited to their acceptance of Medicare and Medicaid.

102.    Defendants discriminated against the Plaintiff on the basis of her disability by denying the Plaintiff auxiliary aids and services necessary to ensure effective communication between the Plaintiff and Defendants, equal access, and an equal opportunity to participate in and benefit from Defendants' health care services in violation of section 504 of the Rehabilitation Act.

103.    As a proximate result of Defendants' unlawful conduct, Mr. and Mrs. Powell both suffered extreme emotional distress, mental anguish, embarrassment, humiliation and other damages.

## CLAIM III

### (Section 1557 of the Affordable Care Act)

104.    Plaintiffs incorporate paragraphs 1 through 90 as if fully set out herein.

105.   Defendants are health care providers who receive federal funding in order to provide health care services.

106.   By forcing Plaintiff and her family to serve as interpreters for Plaintiff during the course of their stay with Defendants, Defendants forced the disclosure of personal medical information involving the Plaintiff and her deceased husband, which the Plaintiff would not have otherwise disclosed to members of her family.

107.   As a proximate result of the forced disclosure of this personal information, Plaintiff suffered damages, including but not limited to, mental anguish and emotional distress, all in violation of § 1557 of the Affordable Care Act.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

A.    That the Court declare that the policies, procedures, and services provided by Defendants are discriminatory and violate the ADA, § 504 of the Rehabilitation Act of 1973, and § 1557 of the Affordable Care Act;

B.    That the Court enter an Order requiring St. Vincent's East to alter its practices to make its facilities accessible to and usable by individuals who are deaf or hard of hearing to the extent required by Title III of the ADA, § 504 of the Rehabilitation Act of 1973, and § 1557 of the Affordable Care Act;

C.     That the Court enter an Order directing St. Vincent's East to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities, including the deaf and hard of hearing, for such reasonable time so as to allow St. Vincent's East to identify, undertake, and implement corrective procedures;

D.     That the Court enter an Order mandating that St. Vincent's East undertake  a self-evaluation and that such evaluation contain a description of all St. Vincent's East's programs, activities, and services; a review of all policies and practices that govern the administration of such programs, policies and services; and an analysis of whether the policies and practices adversely affect the full participation of individuals with disabilities, including the deaf and hard of hearing, and such programs, services, and activities;

E.     That the Court enter an Order mandating Defendants to expeditiously make all reasonable and appropriate modifications in their policies, practices and procedures, expressly including the provision of qualified interpreters, transcription services, and written materials as well as the provision of telecommunications devices for the deaf, telephone handset amplifiers, television decoders, and telephones compatible with hearing aids, as is necessary to bring St. Vincent's East within compliance with the strictures of the ADA, and to take all such other steps as are reasonable and necessary to insure that persons with disabilities, including the

deaf and hard of hearing, are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against;

F.    That the Court award reasonable attorney's fees, costs (including expert's fees) and other expenses of suit, to the Plaintiffs; and,

G.    That the Court award such other and further relief as it deems necessary, just, and proper, including, as appropriate, compensatory and punitive damages.

Respectfully submitted,

 s/Andrew C. Allen
Andrew C. Allen (ASB-3867-E56A)
*Attorney for Plaintiffs*

OF COUNSEL:

The Law Offices of Andrew C. Allen, LLC
2910 Linden Avenue, Suite 200-B
Homewood, AL 35209
aallen@acallenlaw.com
(205) 747-1903 Direct
(205) 847-5400 Facsimile

C. Burton Dunn
Five Points Law Group, LLC
2151 Highland Avenue South, Suite 205
Birmingham, AL 35205
(205) 352-4455
burton@5pointslaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2021, I filed the foregoing using the CM/ECF filing system, which will give notice to the following:

Tammy L. Baker
Kimberly R. Ward
Jackson Lewis P.C.
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama 35209

*/s/ Andrew C. Allen*
Of Counsel